# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BRIAN J.,[1]

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,[2]

    Defendant.

Case No. 17-cv-9168

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Brian J. ("Plaintiff") filed this action pursuant to 42 U.S.C.§ 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act). The parties filed cross motions for summary judgment. For the reasons stated below, the Court grants Defendant's motion for summary judgment [17] and denies Plaintiff's motion for summary judgment [10]. Defendant's decision is affirmed.

## I. PROCEDURAL HISTORY

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Andrew M. Saul has been substituted for his predecessor, Nancy A. Berryhill, as the proper defendant in this action. Fed. R. Civ. P. 25(d).

On July 11, 2014, Plaintiff applied for SSI, alleging that he became disabled on September 1, 2013 because of rheumatoid arthritis, sleep apnea, and high blood pressure. (R. at 112, 125). His application was denied initially on December 5, 2014 and upon reconsideration on June 11, 2015. (*Id.*). After requesting a hearing, Plaintiff, represented by counsel, testified before an Administrative Law Judge (ALJ) on September 7, 2016. (*Id.* at 36, 142–44). The ALJ also heard testimony from Plaintiff's wife and a vocational expert (VE). (*Id.* at 66–103).

On February 1, 2017, the ALJ issued an unfavorable decision. (R. at 18–35). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (*Id.* at 20). At step two, the ALJ found that Plaintiff has the following severe impairments: rheumatoid arthritis, osteoarthritis of the bilateral knees, degenerative arthritis of the lumbar spine, obstructive sleep apnea ("OSA"), and obesity. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 21).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff has the RFC to:

> perform sedentary work as defined in 20 CFR 416.967(a). Specifically, he can lift up to ten pounds occasionally and less than ten pounds frequently. He can carry up to ten pounds occasionally and less than ten pounds frequently. He can sit for six hours in an eight-hour workday, stand for two hours in a workday, and walk for two hours in an eight-

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC, which "is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. § 404.1520(a)(4).

2

hour workday. He can handle, finger, and feel items frequently with his bilateral hands. The claimant can climb ramps and stairs occasionally, but he can never climb ladders, ropes, or scaffolds. He can only occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights. He can never be exposed to moving mechanical parts. He can never operat[e] a motor vehicle. He must avoid even moderate exposure to heat, cold, and humidity. Additionally, he is unable to perform outside work.

(R. at 23). Moving to step four, the ALJ noted that Plaintiff had no past relevant work. (*Id.* at 29). At step five, based on Plaintiff's RFC, age, education, work experience, and the Medical Vocational Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2), the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as assembler (21,000 jobs), sorter (15,000 jobs), or visual inspector (40,000 jobs). (*Id.* at 29–30). Accordingly, the ALJ concluded that Plaintiff was not under a disability since July 11, 2014, the date he filed his SSI application. (*Id.* at 30).

On October 30, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–6). Plaintiff seeks judicial review of the ALJ's decision, which stands as the Commissioner's final decision. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Administration (SSA). 42 U.S.C. § 405(g). The Court may not engage in its own analysis of whether the plaintiff is disabled nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The Court's task is "limited to determining whether

3

the ALJ's factual findings are supported by substantial evidence." *Id*. Substantial evidence "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citation omitted). In addition, the ALJ must "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (internal quotations and citation omitted).

Therefore, "[w]e will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (internal quotations and citation omitted). The court "cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). "[I]f reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). *See also Moon v. Colvin*, 763 F.3d at 721 (standard of review is deferential).

### III. DISCUSSION

In his request for reversal or remand, Plaintiff argues that the ALJ erred in her subjective symptom analysis and in her evaluation of the combined effect of Plaintiff's severe obstructive sleep apnea and obesity.[4] After reviewing the record and

---

[4] The Court notes that in his opening brief, Plaintiff argued that the ALJ erred by restricting Plaintiff to *frequent* handling, fingering and feeling items with his bilateral hands when the state agency physician, Dr. Greco, to whom the ALJ gave great weight, failed to specify the degree of limitation. (Dkt 10 at 6). Defendant correctly points out that Dr. Greco did in fact specify that

4

the parties' briefs, the Court finds the ALJ's decision was supported by substantial evidence.

**A. Plaintiff has not shown that the ALJ was patently wrong in her subjective symptom analysis**

In evaluating subjective symptoms, ALJ's consider a range of factors, including objective medical evidence, daily activities, "the location, duration, frequency, and intensity of pain or other symptoms," aggravating factors, medication and treatment. SSR 16-3p.[5] The ALJ "must competently explain an adverse-credibility finding with specific reasons supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (internal quotations omitted). "ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses. Therefore, we will only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014) (internal citations omitted); *see also Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) ("So long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn his credibility determination unless it is patently wrong."). The ALJ's RFC assessment need only include those restrictions "that were supported by

---

Plaintiff was limited to frequent bilateral hand use, which the ALJ properly adopted. (Dkt. 17 at 6–7) (citing R. at 121). Plaintiff appears to concede this point by not responding to it in his reply brief.

[5] For all determinations made by an ALJ on or after March 28, 2016, SSR 16-3p supersedes SSR 96-7p and "eliminat[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, at *1. Nonetheless, the factors to be considered in evaluating symptoms under either SSR 96-7 and SSR 16-3p are the same. *Compare* SSR 96-7p, 1996 WL 374186 (July 2, 1996), *with* SSR 16-3p, 2017 WL 5180304, at *7–8 (Oct. 25, 2017).

the medical evidence *and that the ALJ found to be credible.*" Outlaw v. Astrue, 412 F. App'x 894, 898 (7th Cir. 2011) (emphasis added). Plaintiff has not shown that the ALJ's decision was patently wrong.

At the hearing, Plaintiff testified about: (1) having fatigue due to sleep apnea and side effects from his rheumatoid arthritis medication, Methotrexate; (2) leaving his past job due to falling asleep in front of his computer; (3) being unable to sit for more than 15 to 20 minutes at a time due to knee pain; (4) having difficulties using his hands because they would lock up and swell; (5) having difficulty walking and needing to lay on his couch and elevate his legs; (6) having episodes of falling with his legs giving out and using a cane; and (7) having trouble with daily activities like fixing things around the house, lifting groceries and needing his wife to help him with hygiene and dressing because of joint pain. (R. at 46, 51–53, 59, 61–63). His wife testified that Plaintiff: (1) falls asleep during the day because of sleep apnea and fatigue from his medication, Methotrexate; (2) has difficulties with his hands locking up and needs her to massage his hands 30 minutes every morning; (3) has issues with walking, bending and balancing; and (4) cannot perform daily activities such as getting out of bed, taking a shower and getting dressed without assistance from her. (*Id.* at 68–69, 71–73).

The ALJ found that the medical record did not support the severity of the symptoms described by Plaintiff and his wife. The ALJ explained that there were a number of inconsistencies between their hearing testimony and the record, detracting from their subjective allegations. (R.at 25–29). For instance, the ALJ

6

indicated that although Plaintiff's wife testified that Plaintiff talks to Dr. Thomas about his fatigue, the treatment notes from Dr. Thomas do not indicate "consistent complaints about fatigue or ongoing alterations to claimant's CPAP machine to address fatigue issues." (*Id.* at 27) (citing *id.* at 540–69). Further, the ALJ explained that numerous objective findings from June 2014 through June 2016 reveal normal respiratory functioning inconsistent with the degree of limitations Plaintiff alleges, (*id.* at 27) (citing *id.* at 514, 520, 526, 529, 540, 575, 584, 586); and that "numerous physical examinations have failed to reveal significant medical signs, at least partially related to his obesity, that would support his alleged functional deficiency" (*id.* at 27) (citing *id.* at 328, 343, 401, 529, 540, 576, 584). The ALJ also noted that numerous examining doctors have described Plaintiffs gate as normal, which is inconsistent with Plaintiff's wife's testimony (*id.* at 28) (citing *id.* at 342, 421, 45–52, 484, 584). The Court finds that "[t]he ALJ properly took these inconsistencies into consideration when concluding that [Plaintiff's] subjective complaints of disabling limitations were 'not entirely credible.'" *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).

Plaintiff faults the ALJ for citing only to evidence that supports her conclusion and ignoring contrary evidence. (Dkt. 20 at 2–3). The sole example Plaintiff gives is that the ALJ failed to cite to a sleep study conducted on February 5, 2013 that contained a diagnosis of severe obstructive sleep apnea. (*Id.* at 2). But the ALJ explicitly considered the February 2013 sleep study and diagnosis in her decision when she determined that subsequent medical evidence from June 2014 through

7

June 2016 did not support the degree of functional deficits alleged by Plaintiff. (R. at 27). The ALJ even noted that she "specifically left the record open to consider more evidence on this issue but none was submitted." (*Id.*) (citing *id.* at 39, 71–76). Indeed, at the hearing, Plaintiff's counsel requested ten days to submit additional records from the doctor who treated Plaintiff for his "right knee quadriceps reattachment" and to send Dr. Thomas an interrogatory about Plaintiff's fatigue, whether it's a legitimate side effect of methotrexate and rheumatoid arthritis, and the status of Plaintiff's use of the CPAP machine. (*Id.* at 27) (citing *id.* at 75–76). Plaintiff failed to produce any additional records, and thus, it was appropriate for the ALJ to infer that Plaintiff, represented by counsel, "decided another [ ] opinion would not help" him. *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010).

Similarly, Plaintiff's argument that the ALJ "offered no analysis of why his significant problems carrying out basic tasks did not speak to the validity of his pain and symptoms," (Dkt. 10 at 15), is unavailing. The ALJ addressed the serious limitations in daily activities alleged by Plaintiff and his wife and specifically found that they were inconsistent with the medical record and noted that Plaintiff failed to submit any supportive evidence to clear up the inconsistencies, despite requesting to do so. (R. at 24–29).

The Court is also not persuaded by Plaintiff's argument that the ALJ erred by finding that Plaintiff's "treatment had been 'routine and conservative' without advancing reasons why more aggressive treatment would have been appropriate

8

and why [Plaintiff] did not obtain greater care." (Dkt. 20 at 9). Plaintiff asserts that the ALJ was "required to probe at the hearing per SSR 16-3p" why Plaintiff did not receive more aggressive treatment and greater care. (*Id.* at 10). But the ALJ spent considerable time at the hearing doing just that. When asked, Plaintiff testified that there has been no adjustment to his physical therapy or medication despite his complaints to doctors. The ALJ probed "[w]hy do you suppose that is?"; and Plaintiff responded, "I have no idea." (R. at 52). The ALJ further asked if his insurance has changed, and Plaintiff stated that it had around 2011 that is why he had to switch to a different rheumatologist. (*Id.* at 53). Plaintiff indicated that he has regularly scheduled appointments with a rheumatologist and primary care provider. (*Id.* at 53). When discussing these regularly scheduled visits, the ALJ asked again whether either of them recommended any additional treatment like physical therapy, water therapy, change in levels of medications to address his complaints of pain; and Plaintiff responded that they had not. (*Id.* at 51–57). Later on, the ALJ asked if he had considered a wheelchair to address his difficulties walking, and he stated, "No, just haven't considered it." (*Id.* at 63). The Court finds no error in the ALJ's consideration that: (1) "treatment records generally show that his pain has been relatively well controlled with routine and conservative treatment;" (2) Plaintiff reported a noticeable reduction in his pain in October 2015; and (3) medical records from February 2016, indicated that his rheumatoid arthritis was stable with medication, (*id.* at 28) (citing *id.* at 334, 525, 532, 535), when assessing Plaintiff's subjective symptom allegations.

Finally, Plaintiff argues that the ALJ erred by using the boilerplate phrase "not entirely consistent" in her subjective symptom evaluation because that language indicates that the ALJ used a stricter standard than the "preponderance of evidence" standard. (Dkt. 10 at 12). This argument has been recently rejected by a court in this district. *Sheila D. H. v. Saul*, No. 19 C 363, 2019 WL 3943642, at *2–4 (N.D. Ill. Aug. 21, 2019). In *Sheila*, the court noted, "it is not clear what difference there is, if any, between 'not entirely consistent' with and 'not supported by a preponderance of' the evidence," particularly when the ALJ thoroughly analyzes the evidence after using this phrase. *Sheila D. H. v. Saul*, No. 19 C 363, 2019 WL 3943642, at *2–4 (N.D. Ill. Aug. 21, 2019). The Seventh Circuit has repeatedly found the use of boilerplate language such as this is harmless when the ALJ proceeds to give reasons justifying her subjective symptom evaluation. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) ("The use of boilerplate is innocuous when . . . the language is followed by an explanation for rejecting the claimant's testimony."); *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013) ("the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination."). Here, the Court finds the use of the boilerplate language, "not entirely consistent," is harmless as the ALJ thoroughly analyzed the evidence and thoroughly explained the reasons for her conclusions.

In sum, the ALJ's subjective symptom evaluation is supported by "'specific reasons supported by the record,'" and Plaintiff did not show that it was "patently

wrong." *Weaver*, 746 F. App'x at 579 (quoting *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013)); *Horr*, 743 F. App'x at 20.

**B. The ALJ properly considered Plaintiff's obesity and OSA**

Next, Plaintiff also argues that the ALJ failed to adequately consider the combined effects of Plaintiff's obesity and obstructive sleep apnea in her RFC. (Dkt. 10 at 11). The Court disagrees. The ALJ identified Plaintiff's obesity and OSA as severe impairments and discussed their functionally limiting effects alone and in combination in her decision. (*See* R. at 20, 23, 27). The ALJ thoroughly discussed Plaintiff's OSA and obesity and how the medical evidence did not support the degree of functional limitations alleged by Plaintiff. (*Id.* at 27). The ALJ acknowledged that obesity is "a complex chronic disease" and can complicate, aggravate or increase the risk of developing other impairments, including sleep apnea. (*Id.*). The ALJ concluded that "numerous physical examinations have failed to reveal significant medical signs, at least partially related to his obesity, that would support his alleged functional deficits." (*Id.*).

Furthermore, the ALJ's RFC is consistent with the functional limitations given by state agency consultant, James Greco, M.D., who considered the combined affects of obesity and OSA throughout his opinion. Dr. Greco specifically explained how: (1) Plaintiff's "supermorbid obesity" supported the exertional, postural, and environmental limitations in his physical RFC assessment; and (2) Plaintiff's obesity and OSA supported the manipulative limitations in his RFC evaluation. (Dkt.115–123). The ALJ gave great weight to Dr. Greco's opinion, and there were no

11

other opinions offered that imposed RFC restrictions greater than those imposed by the ALJ. "There is no error when there is no doctor's opinion contained in the record [that] indicated greater limitations that those found by the ALJ." *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (internal quotations omitted).

The Court notes that, in his opening brief, Plaintiff did not argue that the ALJ committed any error in weighing the opinion evidence except to say that the ALJ should have re-contacted Dr. Greco "to ascertain whether he intended to limit Plaintiff to occasional or frequent hand use." (Dkt. 10 at 7). As noted *supra*, footnote 4, this argument is without merit because Dr. Greco explicitly indicated that Plaintiff was limited to frequent hand use which the ALJ adopted. For the first time in his reply brief, Plaintiff argues that the ALJ erred by relying on Dr. Greco's opinion because there were records that postdated his opinion that Dr. Greco did not consider. (Dkt. 20 at 6). The Court is not persuaded. First, it is well-settled that "arguments raised for the first time in a reply brief are waived." *Malkan v. Am. Bar Ass'n*, No. 19-1958, 2019 WL 6717047, at *3 (7th Cir. Dec. 10, 2019). Second, waiver notwithstanding, the ALJ specifically addressed all of the pieces of evidence highlighted by Plaintiff and found that they did not indicate any greater restrictions than those given by Dr. Greco or in her RFC. (R. at 27–28).

Moreover, Plaintiff fails to identify what, if any, additional restrictions are warranted due to Plaintiff's combined impairments. *See Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) (the claimant must provide evidence that his conditions "support specific limitations affecting [his] capacity to work"); *Perez*, 881

F. Supp. 2d at 945 ("A diagnoses, or symptom for that matter, does not automatically translate to a limitation or impairment and simply listing them proves nothing."). "It was [Plaintiff's] burden, not the ALJ's, to prove that [he] was disabled." *Summers*, 864 F.3d at 527 ("[B]ecause [Plaintiff] was represented by counsel at the hearing, [he] is presumed to have made [his] best case before the ALJ."); *see* 20 C.F.R. § 404.1512(a)(1).

Accordingly, the Court finds that the ALJ adequately considered the limiting effect of Plaintiff's obesity in combination with his other impairments, including OSA, and reasonably concluded that Plaintiff was capable of a performing a reduced range of sedentary work.

## IV. CONCLUSION

For the reasons stated above, the Court grants Defendant's motion for summary judgment [17] and denies Plaintiff's motion for summary judgment [10]. The Commissioner's decision is affirmed.

E N T E R:

Dated: February 7, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge